UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHNNIE M. GRAHAM, JR.,

    Petitioner,

v.                                              Case No:   2:16-cv-808-FtM-29NPM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

    Respondents.
_____/

## OPINION AND ORDER

Before the Court is Petitioner Johnnie M. Graham, Jr.'s Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. # 1). Graham challenges his 2000 conviction for Second Degree Murder, for which he received a life sentence from the Twentieth Judicial Circuit Court, in and for Lee County, Florida. The life sentence was later vacated, and Graham was re-sentenced to 34.5 years imprisonment. Graham raises twelve grounds. Grounds 1 through 10 allege ineffective assistance of counsel at trial. Ground 11 alleges the trial court erred in its instruction of the lesser included offense of manslaughter. And Ground 12 alleges Graham was prejudiced by the admission of evidence under a state evidentiary rule.

Respondent filed a Response (Doc. #24), and Graham filed a Reply (Doc. #30). In his Reply, Graham concedes that Grounds 1 –

9 and 11 were not exhausted, and he concedes he is not entitled to relief for Ground 12. Ground 10 is thus the only contested ground.

In an earlier order, the Court found the Petition to be timely filed. (Doc. #19). Graham does not request an evidentiary hearing, and the Court finds the facts are well-developed in the record, so an evidentiary hearing is not warranted. Schriro v. Landrigan, 550 U.S. 465, 474 (2007); 28 U.S.C. § 2254(e)(2).

I.  **Procedural Background**

On October 9, 1998, Graham was charged by criminal information with the murder of his former girlfriend, Michelle Wright. (Doc. #25-2 at 8). Graham pled not guilty through his trial attorney, Mark W. Ahlbrand. (Doc. #25-2 at 10). Graham's trial started on June 19, 2000, and the jury found Graham guilty of Second Degree Murder by unanimous verdict seven days later. (Doc. #25-2 at 45). After a presentence investigation and a sentencing hearing, Judge Thomas S. Reese sentenced Graham to imprisonment for a term of natural life. (Doc. #25-2 at 100). Graham, through appointed counsel, appealed his conviction, and Florida's Second District Court of Appeal ("2nd DCA") affirmed per curiam without a written opinion. (Doc. #25-4 at 62).

While his direct appeal was pending, Graham filed a pro se motion to correct his sentence under Florida Rule of Criminal Procedure 3.800. (Doc. #25-4 at 66). The State conceded that the

life sentence was erroneous and requested the sentence be corrected to 417.2 months. (Doc. #25-4 at 74-75). But the trial court denied the motion. (Doc. #25-4 at 91). Graham then filed a pro se Petition for Habeas Corpus in the 2nd DCA, arguing his appellate counsel's failure to raise the sentencing issue deprived him of his right to effective assistance of counsel. (Doc. #25-4 at 100). The 2nd DCA reversed Graham's life sentence and remanded to the trial court for resentencing. (Doc. #25-4 at 416-17). On remand, the trial court sentenced Graham to 417 months and 6 days. (Doc. #25-4 at 441). Graham appealed the new sentence, and the 2nd DCA affirmed. (Doc. #25-4 at 481).

On August 9, 2012, Graham constructively filed a Motion to Correct Illegal Sentence. (Doc. #25-14 at 35). The court summarily denied the motion, (Doc. #25-14 at 50), and the 2nd DCA affirmed (Doc. #25-14 at 66).

On August 13, 2013, Graham filed a Motion to Supplement/Add Additional Grounds to the Original 3.850 Motion. (Doc. #25-5 at 36). Graham attached to the motion evidence that he constructively filed a motion for postconviction relief on September 13, 2004, by delivering it to prison officials for mailing, though it was never filed with the court. (Doc. #25-5 at 42). The postconviction court allowed Graham to enlarge issues raised in his original motion, disallowed any new claims because

3

Graham failed to raise them within Rule 3.850's two-year time limit for amendments, and ordered the State to respond. (Doc. #25-5 at 88-89). After substantial briefing, an evidentiary hearing, and Graham's voluntary dismissal of one ground, the postconviction court denied the motion. (Doc. #25-11 at 478 *et seq*.). Graham appealed—but limited his appeal to a single ground—and the 2nd DCA affirmed per curiam without a written opinion. (Doc. #25-14).

## II. Applicable Habeas Law

### a. AEDPA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

4

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. White, 134 S. Ct. at 1702; Casey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent it the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson,

234 F.3d at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

### b. Exhaustion and Procedural Default

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law. Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Pope v.

6

Sec'y for Dep't. of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).

> Procedural defaults generally arise in two ways:
>
> (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now.

Cortes v. Gladish, 216 F. App'x 897, 899 (11th Cir. 2007). A federal habeas court may only consider a procedurally barred claim if (1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." Id. (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)).

### III. Analysis

#### a. Grounds 1-9

Respondent argues Petitioner's first nine grounds are procedurally barred because he voluntarily dismissed Ground 1 before the postconviction court considered it and he abandoned Grounds 2-9 by failing to address them in his appeal. In reply,

7

Petitioner concedes that Grounds 1-9 are procedurally barred. (Doc. #30 at 1-2). The Court agrees. In Florida, when a petitioner receives an evidentiary hearing in a Rule 3.850 challenge, failure to address issues in an appellate brief constitutes a waiver. Cortes, 216 F. App'x at 899. Graham's 3.850 appeal presented one issue: "Whether the post conviction court erred by denying Ground 10 in Appellant's 3.850 motion on the doctrine of laches." (Doc. #25-14 at 5). Grounds 1-9 are procedurally barred, and this Court cannot reach their merits.

### b. Ground 10

Graham argues he was denied effective assistance of counsel because his trial counsel, Mark Ahlbrand, did not call him to testify. (Doc. #1 at 22). Graham claims he told Ahlbrand he wanted to testify, even after being advised it would open the door to a prior felony conviction. (Id.). But after preparing Graham to testify and referencing Graham's expected testimony in his opening statement, Ahlbrand rested his case before calling Graham to the stand. (Doc. #25-11 at 484).

After an evidentiary hearing, the postconviction court denied Ground 10 on the merits and found that it was barred by laches. (Doc. #25-11 at 483-93). When a state court rules in the alternative, denying a petitioner's claim on the merits and on an independent state procedural ground, "the federal court should

8

apply the state procedural bar and decline to reach the merits of the claim." Waldrip v. Humphrey, 532 F. App'x 878, 883 (11th Cir. 2013) (quoting Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994)). This court may not reconsider a "federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate bases for decision." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

The postconviction court explicitly invoked Florida's laches doctrine in finding Graham's 3.850 motion procedurally barred:

> 16. Finally, the State has also raised the doctrine of laches with respect to the entirety of Defendant's postconviction motion. As discussed in prior orders and briefly above, Defendant appears to have initially attempted to file this postconviction motion in 2004. However, the motion did not appear in the record until 2013, when he attempted to amend his postconviction motion and attached a copy of the original motion to his pleading.
>
> 17. Laches may bar a postconviction claim if the State proves 1) that the defendant failed to exercise due diligence in pursuing his motion and 2) that the State was prejudiced by the resulting delay. See McCray v. State, 699 So.2d 1366 (Fla. 1997); see also Xiques v. Dugger, 571 So.2d 3 (Fla. 2d DCA 1990). Laches has been applied to postconviction proceedings when "it is obvious that the state has been manifestly prejudiced and no reason for an extraordinary delay has been provided." Id. at 1368. The State can be prejudiced as time goes by because "records are destroyed, essential evidence may become tainted or disappear, memories of witnesses fade, and witnesses may die or be otherwise unavailable." Id. "[T]he policy rationale for allowing a laches defense is important - to acknowledge the finality of convictions at some point which, in turn, will foster confidence in the judicial system." Bartz v. State, 740 So.2d 1243 (Fla. 3d DCA 1999).

9

18. Under Rule 3.850, Defendant needed to file his motion within two years of his judgment and sentence becoming final. The Second District Court of Appeal affirmed his conviction and sentence and its mandate issued on September 19, 2002. The mail log attached to Defendant's 2013 filing shows that he gave his motion to prison officials for mailing on September 13, 2004, which was within the two-year deadline. This motion was never filed and the Clerk has no record of ever receiving the original motion. Thereafter, Defendant did not follow up on his motion until 2007 when he filed a notice of inquiry. Attached to this order is a copy of the 2007 notice of inquiry, marked as exhibit I. Four years later, in 2011, he filed a notice of inquiry for a "motion for post conviction relief' which had been "pending in this Court for a long time." Attached to this order is a copy of the 2011 notice of inquiry, marked as exhibit J. Finally, in 2013, he attempted to file an amendment to his 3.850 motion, and he attached a copy of his original motion to his amendment along with a copy of the jail mail log. The Court struck the amendment for being untimely but directed the State to respond to the 2004 motion.

19. The Court finds that Defendant did not exercise due diligence in the pursuit of his postconviction motion. The record is replete with other filings from Defendant regarding his motion to correct sentence and appeals; it is clear that he was familiar with the postconviction process and knew the correct address to send his pleadings in order to have them filed. At the hearing, Defendant testified that his main focus after being resentenced was his 3.850 motion, and yet, after being resentenced in 2005, he only inquired on the status of his motion twice and tried to add an additional claim almost a decade later. According to Defendant's testimony at the hearing, the clerk responded to his 2004 notice of inquiry by sending him forms regarding indigency status, perhaps because there was no status update to be given on a non-existent motion. Despite this unresponsive answer, Defendant did not file another notice of inquiry for four years. The 2011 notice of inquiry asks for the status on a "motion for postconviction relief," without specifically calling it a 3.850 motion. Indeed, the clerk who responded to the

notice sent Defendant copies of documents relating to his 3.800(a) motion from 2005. Although this would have been yet another unsatisfactory answer to a notice of inquiry about a 3.850 motion, Defendant waited another two years to file an amendment to his 3.850 motion, at which point the original motion was finally filed into the record as an attachment. Defendant insisted at trial that he was always worried about his 3.850 motion and always pursuing it. However, this claim is simply not consistent with the time that passed between Defendant's inquiries on the status of his motion.

20. In order for laches to apply, the State must also prove that it was prejudiced by the delay. It is easy to conclude that prejudice exists here. This case presents a textbook example of why Rule 3.850 motions must be filed within a certain time limit: the key witness to confirming or refuting most of Defendant's claims, his trial attorney Mark Ahlbrand, passed away in 2013. Without his testimony, the State had no evidence to present as to why he did not call Defendant to trial, despite agreeing that he would testify and actually helping him prepare to testify. The State was unable to argue that any of Defendant's other claims were the result of trial strategy either. The Court was able to analyze most of Defendant's sufficient claims after an excessive investment of judicial resources, including a painstaking review of the enormous record in this case, but most claims could have been resolved with just a few minutes of testimony from Mr. Ahlbrand. This is the exact situation McCray warns of - where evidence and witnesses are no longer available due to the long delay in pursing the motion, leading to frustration of the proceedings. The policy concerns expressed in Bartz, 740 So.2d 1243, are upheld by the application of laches to motions such as this.

21. The Court finds that Defendant did not exercise requisite due diligence in prosecuting his 3.850 postconviction motion and that the State was prejudiced by the delay that resulted. The doctrine of laches is thus applicable to this case, and the Court denies the motion on that basis, as an alternative to all other rulings made on Defendant's claims in this order and the Court's prior orders.

(Doc. #25-11 at 490-493). Petitioner appealed, and the Second DCA affirmed per curiam without a written opinion. (Doc. #25-14 at 31).

Because Florida courts found Ground 10 barred by an independent state procedural principle, Graham must show "adequate cause and actual prejudice" or that "the failure to consider the claim would result in a fundamental miscarriage of justice." Cortes, supra.

According to Graham, the cause of the delay in his postconviction claim was the postconviction court's failure to timely consider his properly filed 3.850 motion. (Doc. 30 at 3). Graham proved he delivered the 3.850 motion to prison officials for mailing in 2004 (which was enough to satisfy the AEDPA timeliness requirement), but the record reflects the clerk did not receive and file the motion until 2013. (Doc. 25-13 at 349-52). The postconviction court did not find laches because of a delay in filing the 3.850 motion. Rather, it found laches because Graham did not exercise due diligence after delivering the motion to prison officials for mailing. Graham does not attempt to show cause for that lack of diligence.

This case differs from Alexander v. Dugger, 841 F.2d 371 (11th Cir. 1988), in which the petitioner demonstrated cause

12

for his procedural default. Similar to Graham, Alexander mailed a petition for rehearing of his 3.850 motion to the court clerk, but the motion was never docketed, causing Alexander to miss an appeal deadline. Alexander, 841 F.2d at 374. But unlike Graham, Alexander diligently pursued his claim by filing an appeal less than a year later. Id. And Alexander gained no strategic advantage by the delay, whereas during Graham's delay, Ahlbrand — the only person who could meaningfully contradict Graham's testimony — died. The distinction is important because, "[i]n this circuit, a finding of cause must be based on a determination that a miscarriage of justice was suffered and no strategic advantage was gained by failing to comply with the procedural rule." See id. Graham did not show adequate cause for his lack of diligence in pursuing his 3.850 motion.

Graham also fails to show he suffered actual prejudice. To establish prejudice, Graham "must demonstrate that the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1365 (11th Cir. 2020). The postconviction court considered the merits of Ground 10 and found that even without laches, the ground would be denied. In its analysis, the court found that Graham

13

was not prejudiced by Alhbrand's failure to present his testimony considering the overwhelming evidence of Graham's guilt and the cumulative nature of Graham's testimony vis-à-vis his recorded statements that were played for jury:

> 17. It being established that defense counsel did not call Defendant at trial despite his uncontroverted testimony that he desired to testify, the Court must consider whether Defendant was prejudiced by his lack of an opportunity to testify in his defense. The State argues in its written closing argument that Defendant suffered no prejudice because the evidence against Defendant was overwhelming, including: 1) Defendant was seen chasing after the victim's car the last time she was seen alive, approximately one day before her body was found, by two different witnesses, despite his claim that he never saw her that day; 2) Defendant had previously threatened to kill the victim; 3) DNA from semen found in the body's vagina matched Defendant; 4) due to how intact the sperm cells were, the semen was deposited within approximately 24-48 hours of the sample being retrieved from the body; 5) the body had defensive wounds on her hands and arms, and DNA from the victim's fingernail scrapings matched Defendant; 6) the other possible suspect, the man she dated and slept with the night before she disappeared, was excluded as a suspect by the DNA evidence from both the semen and the fingernail scrapings; 7) because of the amount of semen found in the body and the lack of semen stains in the victim's underwear, she did not stand up again in between having sex and being murdered, as regular activity such as standing, walking or showering causes semen to drip out of the body after sex; and 8) the victim's keys were found after her death inside the apartment she shared with Defendant. Attached to this order are copies of the transcript of the testimonies of Angela Grimsley, Selina Lindo, Clifford Henderson, Josephine Barron and Tonya Anderson, marked as exhibit G. See also the previously attached testimony of Tomaleta Short and the forensic expert

witnesses.

18. In addition to the above testimony and evidence, Defendant's recorded statements to law enforcement were played for the jury. In his first statement, Defendant insisted that the last time he saw the victim was the night before her disappearance, which was contradicted at trial by the testimony of Mr. Henderson and Ms. Lindo, who saw him chase after her car the day of her disappearance. During his first statement, Defendant frequently changed details of his version of the facts and could not give straight answers about his whereabouts at specific times on the day of the disappearance. Moreover, he seemed to be aware that the victim was dead, even though the victim's name had not yet been released in media reports about the body being found. In Defendant's second statement, given shortly after the first statement and about one week after the victim's death, he said that the last time he had sex with the victim was "probably...a couple of days" before she disappeared. Thereafter he mentioned taking a shower with her the night before she disappeared, but did not mention having sex at the time, nor did he correct his earlier answer about the last time they had sex. Defendant also repeated his claim from the first interview that he was at his mother's house at the time two witnesses saw him chase after the victim's car at their apartment complex. Finally, Defendant told the officers several times in the two statements that he had his own key to the apartment. Attached to this order are copies of the transcripts of Defendant's two statements to police, marked as exhibit H. The statements contain the same facts Defendant claims he would have testified to if he were allowed to testify at trial.

. . .

21. . . . Defendant's testimony would only have rebutted certain portions of the State's evidence. To determine prejudice, the probative value of this testimony, and the potential effect it may have had on the verdict, must be considered in light of the evidence of guilt, especially in light of the fact

15

that similar rebuttal evidence was introduced at trial through Defendant's recorded interviews with law enforcement.

22. After reviewing the record in this case, the Court finds that Defendant has not demonstrated a reasonable likelihood that the outcome of his case would have been different had his attorney called him to testify. Even assuming that Defendant had been called and provided the testimony proposed at the evidentiary hearing, there would have been ample unrebutted evidence indicating Defendant's guilt. The forensic evidence in particular points to Defendant being the only possible perpetrator. The State's expert testified that the semen found in the body's vagina had been deposited no more than 48 hours before being retrieved by law enforcement and that the victim did not get up in between having sex and being strangled. The DNA profile extracted from this semen matched Defendant to the exclusion of all but approximately 1 in 17 million other African American men; the DNA extracted from the fingernail scrapings was even more conclusive, with an approximately 1 in 400 million chance of the DNA belonging to someone other than Defendant. See the previously attached testimony of expert witness Martin Tracey. When considered together, the only conclusion that can be drawn is that Defendant had sex with the victim immediately before her death and is the person who caused her death, preventing her from getting up again after having sex. On top of this irrefutable DNA evidence, testimony at trial established that Defendant and the victim had an unstable relationship, that Defendant had previously threatened to kill her, and that Defendant was running after her trying to get her attention the last time she was seen alive - which Defendant denied happening despite the testimony of two witnesses. Finally, Defendant's proposed testimony would have offered no explanation for how the victim's keys were found inside a dresser in the apartment she shared with Defendant, when other witnesses had seen the keys in her possession before she disappeared.

> 15.[sic] After considering the totality of the circumstances, the Court finds that there is no reasonable probability the outcome of trial would have been different had Defendant been called to testify at trial. Accordingly, he did not suffer any prejudice and his attorney could not have been ineffective for failing to call him. Ground ten of Defendant's motion is denied.

(Doc. #25-11 at 485-90 (footnotes omitted)).

This Court agrees with the postconviction court. Given the overwhelming evidence of Graham's guilt, there is no reasonable probability that his testimony would have changed the outcome of his trial. It would have been cumulative with his recorded statements, and it would have done nothing to rebut the forensic evidence that identified Graham as the likely killer.

Even without cause and prejudice, a petitioner can overcome a procedural default if it would result in a miscarriage of justice, which occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 496 (1986). That is not the case here. Graham has not made the required "colorable showing of actual innocence[.]" Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999).

For the foregoing reasons, Graham cannot circumvent his state procedural default, and Ground 10 is dismissed.

### c. Ground 11

Graham argues the trial court violated his 14th Amendment

17

rights by erroneously instructing the jury that manslaughter required an intent to kill the victim, depriving him of an accurate instruction for a lesser-included offense. (Doc. #1 at 24). Respondent argues Ground 11 is procedurally barred, (Doc. #24 at 22), and Graham concedes the point (Doc. #30 at 8). Graham first raised the issue in his Motion to Supplement/Add Additional Grounds to Original Rule 3.850 Motion on August 13, 2013, well outside Rule 3.850's two-year statute of limitations. (Doc. #25-5 at 37). And, like Grounds 1-9, Graham failed to argue the point on appeal. See Section III.a., supra. Ground 11 is procedurally barred.

### d. Ground 12

In his final ground, Graham argues the trial court's admission of Williams Rule[1] evidence denied him a fair trial. (Doc. #1 at 26). The evidence is question is witness Tomaleta Short's testimony that Graham told the victim, "If I catch you fucking up, I will fuck your ass up." (Doc. #25-2 at 412). The trial court allowed the testimony over Ahlbrand's objection. (Id. at 407-08).

The parties disagree whether Graham exhausted Ground 12, but Graham concedes he is not entitled to relief because "he fails to

---

[1] The Florida Supreme Court enunciated the rule in Williams v. State, 110 So. 2d 654, 659-60 (Fla. 1959): "Our view of the proper rule simply is that *relevant* evidence will not be excluded *merely* because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy."

show that the state court's ruling...was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded agreement[.]" (Doc. # 30 at 9); see Harrington v. Richter, 562 U.S. 86, 103 (2011). Graham further concedes that Short's testimony was admissible to show motive. (Doc. #30 at 9).

The Court agrees that Ground 12 fails. Federal habeas review of state evidentiary rulings is narrow. "Only when evidentiary errors 'so infused the trial with unfairness as to deny due process of law' is habeas relief warranted." Felker v. Turpin, 83 F.3d 1303, 1311 (11th Cir. 1996) (quoting Lisenba v. California, 314 U.S. 219, 228 (1941)). That is not the case here. Ground 12 is dismissed.

### IV. Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (citations omitted). Graham has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is now

**ORDERED:**

1. Johnnie M. Graham's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1) is **DISMISSED.**

2. The Clerk shall enter judgment, terminate all deadlines and motions, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida this __25th__ day of November 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record